By the Court.—Sedgwick, Ch. J.
Before the statutes of this state were passed,- the powers and title of an executor had the broadest scope. In Wankford v. Wankford (1 Salk. 299), the judges agreed that an executor is a complete executor to all purposes, but bringing of actions before probate; that before probate he may release an action, may be sued, may alien or give away the goods, or otherwise intermeddle with them.
He could not bring an action before probate, because he could not show the will proved under the seal of the proper court. In 11 Vin. Ab. 202, Execution (Aa) 2, it is said upon the cases cited, “ If an executor, before probate of the will, bring an action of debt upon a bond due to him as executor, but when he declares he shows it to the court proved, this being proved after the action brought, yet the action is well brought, because he was executor before,probate, though by law he is not permitted to sue before probate ; yet this being proved, the impediment is removed ab initio. for he by showing of the will to the court, satisfies the ceremony which the law requires, which he has done, so as the law requires.”
In Hensloe’s Case (9 Rep. 38 a), it is said: “The executors have their title by the will, which is temporal, and to the goods and chattels also which are temporal, as it is agreed in Plow. Com. in Giresbrook’s Case, 280, which will is complete as to all goods in possession and reversion, and as shall be after said, to release debts and duties, before any probate. But as to bringing of actions, in the king’s court, the judges do not admit the executors to sue for things in action, unless they show the will proved duly under the seal of the ordinary .... so that the probate of the will doth not give them any interest or title either to the things in action or in possession, for they have their whole title and interest by the will, and not by the probate ; but yet *231 without the probate, the judges will not allow them to bring actions.”
These powers of executors named in a will are still valid, excepting to the extent they have been changed by the statutes. So far as this case is concerned, the principal provision of the statute is 2 R. S. 71, § 16: “ No executor named in a will shall, before letters testamentary are granted, have any power to dispose of any part of the estate of the testator, except to pay funeral charges, nor to interfere with such estate in any manner further than is necessary for its preservation.”
A construction of this statute was involved in the decision of Thomas v. Cameron (16 Wend. 579). Judge Bronson considered the effect of a plea that the plaintiffs who sued as executors, were not executors at the time of the commencement of the action, without saying that they were not afterwards executors. He thought that at common law the plea should have alleged that the plaintiffs are not and never were executors, but that under the statute it was sufficient. The persons named as executors could only acquire the right to sue by proving the will. “If they were not executors at the time the suit was commenced, letters subsequently obtained would not aid them by relation. The statute has introduced a new rule, by taking away the common law right to sue before probate.” He had said, “If the goods of the testator are taken from the executor before probate of the will he may maintain trespass, trover or replevin on his own possession, and in such a case he is not obliged to make a profert of the letters testamentary.”
Judge Bronson also gave the opinion in the Matter of Faulkner (7 Hill, 181). Falkner and one Finley were named as executors in the will of one Elliott. Finley proved the will, and qualified. Before Faulkner qualified he received several sums of money belonging to the estate. Afterwards he qualified. He being indebted, absconded. At a meeting of creditors under a statute, Finley, as executor, claimed for the estate, priority of payment out of Faulkner’s property, of the sums of money received by the *232 latter, under the statute that the trustees “shall first pay-all debts that may be owing by the debtor as executor, etc.’ ’ The opinion said that the objection urged was that under the 16th section, 2 R. S. 71, Faulkner was not executor at the time he received the money, and that Thomas v. Cameron (16 Wend. 579), was cited. “ But the answer is, that when Faulkner qualified as executor, his authority related back and legalized the payments which had previously been made to him (Priest v. Watkins, 2 Hill, 225). He afterwards held the money, and it was a debt against him as executor.”
Undoubtedly, the court must have had in mind 2 R. 8. 449, § 17. “No person shall be liable, as executor of his own wrong for having received, taken or interfered with the property or effects of a deceased person, but shall be responsible as a wrongdoer in the proper action, to the executors, etc., of such deceased person for the value of any property or effects so taken or received, and for all damages caused by him to the estate of the deceased.” It must have been considered that the subsequent qualifying as executor operated by way of relation so as to prevent Faulkner being deemed an executor of his own wrong, or liable in trover or trespass only.
Priest v. Watkins (2 Hill, 226), stated the law in reference to administrators. The plaintiffs were administrators, etc., of David Benson, one being his widow. After the death, before letters of administration had been taken out, the widow had received payment of a note, part of the estate of the intestate. After the plaintiffs had received the letters, they brought suit upon the note, and the payment was pleaded. It was held to be a defense. For the plaintiffs the statutes that have been referred to were cited. The court said “ that, independent of the provisions of the Revised Statutes as to executors de son tort, the letters of administration would have related back and legalized the payment in question can admit of little doubt (Rattoon v. Overacker, 8 Johns. 126; 1 Will, on Ex. 240, 396-7), and we are of opinion that those provisions were not intended to *233 operate any alteration of the law in this respect.” -It will be borne in mind that a person entitled to administration had no power or authority, before taking letters, to interfere with the estate. He was without the power, as the statute says the executor shall be without power.
In Bellinger v. Ford (21 Barb. 314), the court distinguished cases like Thomas v. Cameron, where an act may not be made valid by relation and such where it may be, like the cases already cited, and Vroom v. Van Horn (10 Paige, 549). As to the latter kind of case, Judge Bocees said they were cases where the executor or administrator had received or collected money belonging to the estate, voluntarily paid to him, or when he had wrongfully taken possession of and converted to his own use, property belonging to the estate of the testator or intestate, before administration was granted to him. As to all such acts, he stands the same after receiving letters, as if he had been executor or administrator at the time. Such was the rule of the common law, and this doctrine of relation has not been changed by statute, &c.,” but this rule applies to those cases only “ where money is obtained, without any coercive proceedings, and where property of the estate shall have been wrongfully appropriated, and not to illegal or coercive acts against third persons and their property.”
When it is kept in mind, that an executor holds from the will itself, as if he were an agent or attorney of the testator and that the law by a subsequent probate of the will and qualification as executor has secured two principal objects, viz. ; proof in the only form the law can recognize, and that there will be no opportunity of a renunciation of the obligations of administration, the application of the doctrine of relation seems to be reasonable. Apparently, the cases that have been cited are authority that a sale like the present is validated by the subsequent qualifying as executrix.
In a certain sense, a person having a right to be qualified as executor because named in the will, was a!t common law under the same restrictions as those declared by the statute. *234 Until the will was proved, there was no evidence that he had any right to intermeddle with the goods of the testator, and if he did intermeddle, it would appear that he had no lawful power or authority so to do. The consequence would be, that he would be liable, as executor de son tort, although charged in form as rightful executor, in favor of creditors. Under our statute, such a person is held to be not executor de son tort, but a trespasser responsible to the executor or administrator of the deceased for the value of the goods. It is according to ordinary legal rules anomalous that a person having a right to be made executor, who intermeddles, should after his appointment be liable to himself as executor in tort. It therefore may be that the subsequent act of qualification, will, under the statute affect the prior tort, as the probate of the will would at common law.
I have intended, in what has been already said, to limit the act of the executor before letters to a transaction that would be rightful if letters had been granted—for instance, a sale like the present one for true value and for the benefit of the estate.
It seems to me well, however, to take another view, to assume that the sale was contrary to the 16th section, was not made valid by relation, and to inquire what damages the statutes intended should be recovered, under circumstances like the present.
The 2 R. S. p. 81, section, 60 declares that every person who shall take into his possession any of the assets of any testator or intestate, without being thereto duly authorized, as executor, etc., or without authority, etc., shall be liable to account for the full value of such assets to every person entitled thereto, and shall not be allowed to retain or deduct from such assets for any debt due to him. Although this last phrase shows a reference to an act of administration by an executor de son tort, yet the previous words are general and refer to any person.
By 2 R. S. 449, § 17, which takes away liability as executor of his own wrong, and creating instead liability as *235 a wrongdoer, makes the person responsible for the value of any property or effects so taken or received, and for all damage caused by his acts, to the estate of the deceased.
At common law, an executor de son tort could not retain for his own debt, or receive advantage for any act done by him for his own benefit, but under his plea of plene administravit, he might give in evidence payment of just debts, or in .an action of trover, the payment of debts might be recouped from the damages (Sedgwick on Dam. [431]; Middleton’s Case, 3 Co. Rep. 55 and note; Coulter’s Case, Id. 60 and note). This is the rule, when no letters of administration had been subsequently taken out or will proved.
In Woolley v. Clark (5 Barn. & A. 744), the case was of an executor of a last will, suing for damages from the sale of goods of the estate made by the defendant, who had qualified as executor, under a former will, it not being known that there was a later will. But before the sale, the defendant had notice of the last will. Mo mitigation of damages was allowed. The decision was put on the ground that the plaintiff took title from the last will itself, while the defendant had no title, the will under which he qualified, having been annulled by the fact that there was a later will, and he having sold with notice of it. In the present case, the plaintiff had the title, her power to sell being restrained, until letters were issued to her.
Mountford v. Gibson (4 East, 441), passed upon an act, which in itself was a bare trespass, and not shown by the circumstances to be an act of administration, though tortious. The case does not pass upon whether if it had been an act of the latter kind, the defendant would have been liable.
In the present case, the evidence shows that the transaction was such as would have been a rightful act of administration, and appeared to be for the benefit of the assets of the estate. There was no proof that the money paid for the goods was taken by the plaintiff for her personal benefit. It cannot be intended, that she without alleging and proving it, places her action upon a conversion by her *236 of the money. It is to be intended that the money became and remained part of the assets.
I am of opinion that under these circumstances, the true rule of damages, the executrix not claiming the goods themselves, would require that the amount of money formerly paid into and remaining with the estate, should be ■ applied to reduce the amount of the recovery, which was the whole value of the goods. The most of what has been said in this opinion concerns the responsibility of the person named in the will, disposing of goods before letters testamentary. I see no reason for making the,responsibility of the person receiving the goods from her, greater than hers. In the present case, the court found that the value of the goods was $400. As that amount had already,been received on the sale, which was impeached, the plaintiff’s damages are nominal. The amount of the recovery should be reduced to six cents.
Freedman and O’Gorman, JJ., concurred.