## Chicago Title & Trust Company, executor, et al. v. Charles G. Wheeler, for use, etc., et al.

### Gen. No. 11,619.

1. GARNISHMENT—*when executor not subject to.* An executor named in a will is not subject to garnishment, with respect to any money or other estate belonging to any devisee or legatee under the will, by virtue of the Act of 1897, before probate of the will and before letters had been issued; nor does the subsequent appointment, pending the garnishment proceeding, of such executor, relate back and validate the proceedings prematurely instituted.

2. EXECUTOR—*power of, before probate.* The provisions of our Administration Act which declare that until probate an executor's power shall extend to the burial of the deceased, etc., must be read not only as a limitation on the exercise of the powers given by the will, but as a prohibition upon the exercise of all other powers except those enumerated, until after the probate of the will and the qualification by the executor.

Garnishment proceeding. Error to the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1904. Reversed. Opinion filed April 5, 1905.

**Statement by the Court.** This writ of error is prosecuted to reverse a judgment in garnishment rendered against plaintiff in error, Chicago Title & Trust Company, as executor of the will of Sarah J. Wheeler, deceased, and in favor of Charles G. Wheeler for use of Kate Elkins Daniels, executrix, etc.

On or about January 10, 1902, Sarah J. Wheeler died, testate, leaving a will wherein she nominated the Chicago Title & Trust Company as executor of her estate. The will bequeathed to Charles G. Wheeler, one of defendants in error, a legacy of $6,000. On January 17, 1902, he assigned the legacy to the Chicago Title & Trust Company to secure a loan of $1,500. Five days later, on January 22, 1902, Charles G. Wheeler for use of Hettie M. Elkins and Kate Elkins Daniels, executors of the estate of Henry K. Elkins, deceased, instituted a garnishment suit against the "Chicago Title & Trust Company, a corporation, and

Chicago Title & Trust Co. v. Wheeler.

the Chicago Title & Trust Company, executor of the last will and testament of Sarah J. Wheeler, deceased." The writ was served on the same day. On January 23, the day after the service of the writ, the Chicago Title & Trust Company filed in the Probate Court of Cook county its petition for letters testamentary on Mrs. Wheeler's estate. The will was admitted to probate on February 25, 1902, and letters were issued to Chicago Title & Trust Company as executor, on February 26, 1902.

On February 25, 1902, Charles G. Wheeler assigned his legacy to Augustus W. Wheeler, one of the plaintiffs in error, subject, however, to the previous assignment to the Chicago Title & Trust Company for the loan above mentioned. Neither of said assignments was filed for record in the Probate Court of Cook county until the 26th of February, 1902, after the service of the writ of garnishment in this case, but on the day letters were issued.

Pending the suit, Hetty M. Elkins died, and the cause was continued for the use of Kate Elkins Daniels, surviving executor.

The Chicago Title & Trust Company filed an answer in its corporate capacity (not as executor), and upon hearing was discharged. It also filed an answer, sued by the name Chicago Title & Trust Company, executor of the last will and testament of Sarah J. Wheeler, deceased, garnishee, setting up the facts as to the death of Mrs. Wheeler, the naming of the company as executor, the petition for letters, the date of the probate of the will and of the issuance of letters, that the company was not executor of the will when the writ was served, and prayed the same advantage of its answer as if the facts had been pleaded in abatement of the writ and affidavit, and that the writ and affidavit be quashed.

A conditional judgment was entered against the trust company as executor, and the cause was continued until an order of distribution should be entered in the Probate Court. Subsequently the Probate Court entered an order directing the distribution of $2,000 of the legacy and reciting the conditional judgment, and providing that if final

judgment should be entered in this garnishment proceeding against the garnishee and the same be not reversed upon appeal, the executor should pay and satisfy the judgment and costs and pay the balance of the $2,000, if any, to August W. Wheeler or his assigns. Thereupon, on proof of the facts above stated, a final judgment was entered in the Circuit Court for the whole of the $2,000 in favor of the nominal plaintiff, Charles G. Wheeler.

EUGENE H. GARNETT, for plaintiffs in error; GWYNN GARNETT, of counsel.

MORTON DENISON HULL, for defendants in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The question upon which this case turns is, whether or not under our statutes, an executor named in any will may be garnisheed with respect to any money or other estate "belonging to any devisee or legatee under any will" by virtue of the Act of 1897, before probate of the will and before letters have been issued by the court in which the will must be probated.

So far as we are advised, this question has not been before the Supreme Court of this state. In passing upon the question, we are therefore compelled to construe the statutes of this state affecting the question in the light of the decisions of our Supreme Court interpreting those statutes, and with such further aid as the courts of last resort in other states may furnish, where similar statutes have been before them for consideration.

While at common law the legal interest and title to all of the personal property of the testator vested at his death in the executor, it is well known that executors and administrators were not liable to garnishment, until an order of distribution had been entered in the Probate Court, and nothing remained to be done, except to distribute the assets of the estate. Until that time the property of the estate in the hands of the executor or administrator was *in custodia legis* and could not be reached by legal process issued

by another court. The reason was that to permit another
court to interfere with the property would tend to confusion
and produce collision between different judicial tribunals,
and as a consequence the officers of the law would be greatly
embarrassed in the performance of their duties. Whenever
an official holds possession of property as an officer of the
law he is not at common law amenable to process, but when
his relation to the property becomes so far changed that he
is under personal obligation to another regarding the prop-
erty, that obligation may be enforced in any court having
jurisdiction. This we think is held in substance in Triebel
v. Colburn, 64 Ill. 377; Lightner v. Steinagel, 33 Ill. 517;
Weaver v. Davis, 47 Ill. 237.

The question then is, how far this principle has been
modified as applied to executors, by our statutes, and especi-
ally by the Act of 1897.

Before examining the statutes it may be stated that with-
out doubt, at common law, the will created the executor and
gave him all his powers. The person nominated by the tes-
tator was executor by virtue of the will, and he could per-
form any act whatsoever in the scope of the powers conferred
by the will, except maintain and defend suits before letters
testamentary issued. In Redfield on Wills, vol. 3 (2nd
edition), page 20, sec. 2, par. 3, the author says: "By the
English law, an executor could do many, indeed, most acts
pertaining to his office, except maintaining and defending
suits, before proof of the will or obtaining letters testa-
mentary."

Directing our attention to our Act on Administration
of Estates, which is in *pari materia* with the Act of 1897,
we find that section four provides that: "The power of the
executor over the testator's estate, before probate of the will
and obtaining letters testamentary, shall extend to the burial
of the deceased, the payment of necessary funeral charges,
and the taking care of the estate."

Section seven of the Act provides that: "All executors
hereafter appointed, unless the testator shall otherwise di-
rect in the will, and all administrators with the will an-

nexed, shall, before entering upon their duties, enter into bond with good and sufficient security, to be approved by the County Court," etc.

In Walker v. Craig, 18 Ill. 124, the court, in discussing the difference in powers of the administrator and executor, held that an executor derived his power partly from the testator and partly from the law.

In Chappell v. McKnight, 108 Ill. 570, the executors of the will of Mrs. Ferris, which conferred upon them power to sell real estate, acting under the belief that they could, on the probate of the will, exercise all of the powers of the will without qualifying or giving bond or receiving letters testamentary, attempted to sell real estate, and it was held they could not exercise the power and thereby bind the heirs or devisees.

These authorities would seem to indicate clearly that the author of Horner's Probate Law is correct, when he says in section 171: "The powers of an executor before probate, at common law, were numerous. Our statutes restrict such powers. * * * The executor cannot exercise any power conferred by the will until after he has qualified as executor, after probate."

The provisions of our Administration Act which declare that until probate an executor's power shall extend to the burial of the deceased, etc., must be read not only as a limitation on the exercise of the powers given by the will, but as a prohibition upon the exercise of all other powers except those enumerated, until after the probate of the will and qualification by the executor. If the executor cannot exercise the powers conferred upon him before letters testamentary are issued, or in other words, cannot act as executor, except for the purposes specified in section 4 of the Administration Act, may suits be brought against him before probate and issuance of letters?

It is contended by plaintiffs in error that from a consideration of the sections above referred to, and especially section 4, the settled legislative policy of this state must be deduced that suits cannot be brought against executors be-

Chicago Title & Trust Co. v. Wheeler.

fore probate of the will and the issuance of letters. Where statutes analogous to section 4 of our Administration Act are in force, and the question has arisen for adjudication, it seems to have been held universally, so far as we are advised, that suits begun before letters are issued are premature and cannot be maintained.

*In re* William H. Flandrow, 92 N. Y. 256, service of the writ was made upon the person nominated in the will as executrix. There was a contest as to the validity of the will and a special administrator had been appointed. Speaking of the person nominated as executrix, the court said: "The will had not been established, and it had not been decided that she had any right or claim to act as executrix of the estate. Although she was the widow, sole legatee and executrix named in the will, it had never been admitted to probate, and she had acquired no right by which she was authorized to act for or on behalf of the estate. So far as any such authority existed, it was, at that time, vested in the special administrator, the executrix had not qualified, nor had she taken possession of the assets of the estate; she could not have sued as a representative of the estate, nor been prosecuted by any creditor; the most which she could do was to pay the funeral expenses and preserve the assets, and she had been deprived of this power by the appointment of the special administrator. She certainly had no power to represent the estate in reference to debts existing or claimed against it." See also Executors of Gilbert v. Cameron, 16 Wend. 579.

In Fay v. Reager, 34 Tenn. (2 Sneed) 202, the court said: "This bill was filed on the 4th of August, immediately after the probate of the will, but before the qualification of the defendant as executor. * * * The defendant after his qualification as executor answered the bill, without exception, on the ground that it was prematurely and irregularly filed. * * * The attachment was prematurely and wrongfully issued, and must, therefore, be treated as wholly nugatory. It is well settled, under the law, that until after the qualification as executor, he stands upon the

33

same footing with an administrator; and that until he has given bond and been duly qualified as required by law, the goods and chattels of the testator remain in custody of the law and he can do no valid act relating to the administration thereof. See the cases in Meigs Dig., p. 28. From this it results that until after qualification the executor cannot be sued, either at law or in equity, nor can the effects of the testator's estate be attached while in custody of the law."

In a later case, Killebrew v. Murphy, 59 Tenn. 546, the court, in a well-considered opinion, holds that a person nominated in a will as executrix does not hold the estate as executrix and cannot perform any valid act of administration until she qualifies, but that she acts as trustee or bailee, with power to take possession of the estate and preserve it during the period that must elapse before probate and qualification.

The provision of the code under which the above mentioned Tennessee cases were decided was similar to those found in section 7 of our Administration Act. By section 2201 of the Tennessee Code it is provided that "no person shall presume to enter upon the administration of any deceased person's estate until he has obtained letters of administration, or letters testamentary." We regard them, therefore, as entitled to great consideration in determining the question before us.

The Supreme Court of Missouri in Stagg v. Green, 47 Mo. 500, said: "The executor here does not as in England derive his power solely from the will, but the law imposes certain obligations upon him before he is permitted to execute it. The fact that one is named in a will as executor does not, as at common law, make him executor in fact; but only gives him the legal right to become executor upon complying with the conditions required by law."

The provisions of the Maine statute are substantially the same as section 1 of our statute, the phraseology being almost the same. In Millay v. Wiley, 46 Me. 236, the court, after quoting the statute, say: "From which it appears that the following requisites are necessary to constitute the

Chicago Title & Trust Co. v. Wheeler.

person an executor: First, the probate of the will, which any person interested in may offer for probate. See secs. 1 and 2. Second, competency in the opinion of the probate judge. Third, acceptance of the trust, for which purpose he may be cited in. See sec. 4. Fourth, delivery of a bond to discharge the same. Secs. 4, 5, and fifth and last, reception of letters testamentary."

To the same effect may be cited Cleveland v. Chandler, 3 Stewart (Ala.) 491.

Wherever statutes have been passed declaring what an executor may do before probate, qualification and letters as in this state, it may be stated safely that the courts when called upon to pass upon the question have declared that the statute prohibits the executor from doing anything else. The expression of the one power is the exclusion of the other powers.

We perceive no reason appearing upon the face of the statutes, or in their subject-matter, why the Act of 1897 should be regarded as an amendment in any sense of the Administration Act. It relates to a different subject-matter. Undoubtedly, the purpose of the Act of 1897 was to enlarge the remedy of those who are judgment creditors of devisees or legatees under the wills of deceased persons, or the heirs or distributees of any estate. But it is not necessary, in order to give the act full force and effect, to enlarge the legal definition as to who are administrators and executors subject to garnishment under the statute. The statute deals, we think, with fully qualified administrators and executors under the law, and must be so construed.

It is contended by plaintiff in error that under our Administration Act the common-law rule that the title to personal property vests in the executor nominated in the will at the instant of the testator's death, is abrogated; and that the title thereto is held in abeyance until the executor qualifies, when it vests in him by relation from the time of the death. That would seem to be the trend of the authorities cited above, and others. But whether that be so or not does

not seem to be material to the question before us. We are dealing with a remedy created by statute, and the question before us is, when that remedy can be invoked. If the position of plaintiffs in error on that point is sound, it would be an additional reason only, for holding, as we do, that the garnishment in this case was premature, but it is not essential to that conclusion.

The next question is, did the qualification of the trust company as executor subsequently to the service of the writ relate back to the death of Mrs. Wheeler, so as to make the suit good in law?

The general rule upon this subject is that the grant of letters relates back to the testator's death and validates all acts which come within the executor's authority, and which were in their nature, beneficial to the estate. Globe Accident Ins. Co. v. Gerisch, 163 Ill. 631. And it was held in Executors of Gilbert v. Cameron, *supra,* that if plaintiffs were not executors at the time suit was commenced, letters subsequently obtained would not aid them by relation. Bellinger v. Ford, 21 Barbour, 315. If the doctrine of relation cannot aid a suit voluntarily instituted for the benefit of the estate by one suing as executor before probate of will, we see no reason why it should be applied to suits adverse to the estate.

In our opinion the suit was prematurely brought and the garnishee should have been discharged.

The judgment of the Circuit Court is reversed.

*Reversed.*