(No. 85909.—

*In re* ESTATE OF SOFIA GEBIS, a Disabled Person (Joseph Gebis, Appellant, v. Evelyn Swietek, Appellee).

*Opinion filed March 18, 1999.*

Kerry R. Peck, of Peck, Bloom, Miller & Mitchell, LLC, and David L. Cwik, both of Chicago, for appellant.

Michael W. Rathsack, of Chicago, and Benjamin Daidone, of Niles, for appellee.

JUSTICE RATHJE delivered the opinion of the court:
The sole issue presented in this appeal is whether the statutory custodial claim established in section 18—1.1

of the Probate Act of 1975 (755 ILCS 5/18—1.1 (West 1996)) is constitutional. The trial court held that it was not, concluding that section 18—1.1 violated substantive due process, equal protection, and special legislation principles. Appeal from the trial court's judgment lies directly with this court. 134 Ill. 2d R. 302(a). Because the trial court lacked the subject matter jurisdiction to adjudicate a statutory custodial claim, we vacate its judgment.

## BACKGROUND

Joseph Gebis and Evelyn Swietek are the son and daughter of Sofia Gebis. In 1994, Joseph and Evelyn filed a petition with the trial court to have Sofia declared a disabled person. The trial court granted the petition and appointed Joseph and Evelyn as coguardians of Sofia's estate.

Sofia died on February 8, 1997. On July 14, 1997, and pursuant to section 18—1.1 of the Probate Act, Joseph filed a verified claim against the guardianship estate seeking $361,320 in compensation for caring for Sofia during the final years of her life. Joseph alleged that, for 11 years prior to Sofia's death, he lived with Sofia and devoted himself to her care. As a result of personally caring for Sofia, Joseph limited his lifestyle choices and opportunities, limited his chiropractic practice and professional engagements, and suffered emotional distress.

Evelyn, individually and as coguardian of Sofia's estate, moved to dismiss Joseph's claim on numerous grounds. Evelyn first attacked the factual basis for Joseph's claim, arguing that, as coguardians of Sofia's estate and person, she and Joseph hired and paid for full-time professional care for Sofia throughout the course of her disability. Evelyn next attacked section 18—1.1's constitutionality, arguing that section 18—1.1 violated both substantive and procedural due process

principles (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2); the equal protection clause (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2); the prohibition against special legislation (Ill. Const. 1970, art. IV, § 13); and the separation of powers doctrine (Ill. Const. 1970, art. II, § 1).

In a written opinion, the trial court granted Evelyn's motion to dismiss, holding that section 18—1.1 violates substantive due process principles, violates the equal protection clause, and constitutes special legislation. This timely appeal followed.

## ANALYSIS

Although neither party raises the issue, we have an obligation to consider, *sua sponte*, whether the trial court possessed subject matter jurisdiction to adjudicate Joseph's statutory custodial claim. See *People v. Bounds*, 182 Ill. 2d 1, 3 (1998); *Eastern v. Canty*, 75 Ill. 2d 566, 570 (1979).

Subject matter jurisdiction refers to a court's power both to adjudicate the general question involved and to grant the particular relief requested. *In re M.M.*, 156 Ill. 2d 53, 64 (1993). Under the Illinois Constitution of 1970, the circuit court enjoys, with limited exceptions, "original jurisdiction of all justiciable matters." Ill. Const. 1970, art. VI, § 9. Although the legislature may not limit the circuit court's original jurisdiction to hear a justiciable matter, it may create a justiciable matter by creating rights or duties that have no counterpart in common law or equity. See *M.M.*, 156 Ill. 2d at 65; *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155, 165-66 (1989). In such instances, while the circuit court's original jurisdiction to adjudicate the matter derives from the constitution, the justiciable matter itself is defined by the legislature. *M.M.*, 156 Ill. 2d at 65. The legislature may define the "justiciable matter"

in such a way as to limit or preclude the circuit court's authority. *M.M.*, 156 Ill. 2d at 65. When the circuit court's power to act is controlled by statute, the circuit court is governed by the rules of limited jurisdiction and must proceed within the statute's strictures. *M.M.*, 156 Ill. 2d at 66. Any action taken by the circuit court that exceeds its jurisdiction is void and may be attacked at any time. *In re Estate of Steinfeld*, 158 Ill. 2d 1, 12 (1994).

With these principles in mind, we must decide whether, following Sofia's death, the trial court presiding over Sofia's guardianship proceeding had the jurisdiction to adjudicate a statutory custodial claim filed against Sofia's guardianship estate. We hold that it did not.

The general rule is that, upon the ward's death, both the guardianship and the trial court's jurisdiction to supervise the ward's estate necessarily terminate. See *In re Estate of Wellman*, 174 Ill. 2d 335, 350 (1996); *In re Estate of Nelson*, 250 Ill. App. 3d 282, 287 (1993). The Probate Act accords with this general rule, providing that, with the sole exception of the powers and duties set forth in section 24—19 of the Probate Act, "[t]he office of the representative of a ward terminates *** when the ward dies." See 755 ILCS 5/24—12 (West 1996). Section 24—19, which governs the administration of a deceased ward's estate, provides that, "until the issuance of letters testamentary or of administration[,] *** a representative of the estate of a deceased ward has the powers and duties of an administrator to collect." 755 ILCS 5/24—19(a) (West 1996). Under the Probate Act, an administrator to collect "has the power to sue for and collect the personal estate and debts due the decedent *** and by leave of court to exercise the powers vested by law in an administrator." 755 ILCS 5/10—4 (West 1996). This court has held that, so defined, the authority of an administrator to collect is confined to preserving the estate until an executor or administrator is ap-

pointed. See *In re Estate of Breault*, 29 Ill. 2d 165, 179 (1963). An administrator to collect has no power to pay claims filed against the guardianship estate. See *Jacob Wener & Co. v. Freilich*, 268 Ill. 58, 60-61 (1915).

Thus, even if a person filing a statutory custodial claim against a deceased ward's guardianship estate could prove that he is entitled to that claim, he could never enforce that claim because the guardian is statutorily prohibited from paying it. Certainly, if the claimant is powerless to enforce and the guardian is powerless to pay a statutory custodial claim filed against a deceased ward's guardianship estate, the trial court supervising the guardianship estate is powerless to adjudicate such claims, as jurisdiction lies only where the court can grant *the particular relief requested*. See *M.M.*, 156 Ill. 2d at 64.

This is not to say that the creditors of a deceased ward are without remedy. On the contrary, they, like the creditors of *any* decedent, may file a claim against the decedent's estate once an executor or administrator is appointed and the decedent's estate is opened. See 755 ILCS 5/18—1 (West 1996). Or, if the deceased ward's estate is not yet open, a deceased ward's creditors, again like any decedent's creditors, may petition the circuit court either for admission of the decedent ward's will to probate (see 755 ILCS 5/6—2 (West 1996)) or for letters of administration (see 755 ILCS 5/9—3 (West 1996)). What a deceased ward's creditors may *not* do is file a claim against the guardianship estate. Once a disabled person dies, the guardianship terminates and the court supervising the guardianship estate loses jurisdiction to adjudicate a claim filed against that estate. The decedent's estate is the only avenue for recovery. See generally *Nonnast v. Northern Trust Co.*, 374 Ill. 248, 268 (1940) (claims against a ward are filed against the ward if she is living and against her estate if she is dead).

The particular claim at issue in this case, section 18—1.1's statutory custodial claim, may be filed only against a decedent's estate. On its face, section 18—1.1 provides that certain classes of caregivers are entitled to "a claim against the estate *upon the death of the disabled person.*" (Emphasis added.) 755 ILCS 5/18—1.1 (West 1996). Thus, the statutory custodial claim matures and may be filed only after a disabled person dies. Significantly, article 18 of the Probate Act recognizes only two classes of estates against which claims may be filed, those belonging to wards and those belonging to decedents. Once a disabled person dies, she by definition ceases to be a "ward" and instead becomes a "decedent." Thus, it is against the decedent's estate that the custodial claim must be filed. This conclusion is confirmed by the fact that section 18—10 of the Probate Act, which prioritizes claims against a decedent's estate, specifically classifies section 18—1.1's statutory custodial claim as a claim against a decedent's estate. See 755 ILCS 5/18—10 (West 1996).

There is no question that Joseph filed his statutory custodial claim not against Sofia's decedent's estate but against Sofia's guardianship estate. All of the pleadings relating to Joseph's statutory custodial claim, including the briefs filed with this court, bear the caption *"In re* Estate of Sofia Gebis, *a disabled person."* (Emphasis added.) Similarly, all of the pleadings relating to Joseph's statutory custodial claim bear the case number for Sofia's guardianship proceeding, "94—P—6222." Moreover, Evelyn contested Joseph's statutory custodial claim before both the trial court and this court not only in her individual capacity but also as coguardian of Sofia's estate. A decedent's estate does not have a "guardian." Finally, Joseph's brief before this court opens by explaining that "[t]his appeal arises out of a [statutory custodial claim], filed by Joseph *in this disabled person's estate."*

(Emphasis added.) These facts leave no doubt that Joseph's claim is targeted against Sofia's guardianship estate and not against her decedent's estate.

In fact, Joseph's claim could not have been filed against Sofia's decedent's estate because, according to the record and the parties, such an estate has not yet been opened. The record on appeal in case number 94—P—6222 contains not a single pleading relating to the opening of a decedent's estate in Sofia's name, the issuance of letters testamentary or of administration for such an estate, or the admission of Sofia's will to probate. Nor is there any indication that notice of either Sofia's death or the right to file claims against Sofia's estate was ever published. See 755 ILCS 5/18—3 (West 1996). There is one order in the record suggesting that Sofia executed a will and that Joseph filed that will with the circuit court, but Evelyn's counsel explained at oral argument that that filing took place outside of the proceedings in case number 94—P—6222. Finally, we take judicial notice of the fact that, although Sofia's will has been filed with the circuit court of Cook County, a decedent's estate in Sofia's name has not yet been opened. See *In re W.S.*, 81 Ill. 2d 252, 256-57 (1980) (noting this court's long recognized authority to take judicial notice of public records).

Given these facts, we have no choice but to conclude that the trial court in case number 94—P—6222 lacked the jurisdiction to adjudicate Joseph's statutory custodial claim. When Sofia died in February 1997, the trial court's jurisdiction in case number 94—P—6222 was confined to supervising the preservation of Sofia's estate until Sofia's will was admitted to probate or letters of administration issued. Joseph filed his statutory custodial claim in case number 94—P—6222 on July 14, 1997, more than five months after Sofia's death. Until Sofia's will is admitted to probate or letters of administration issue, the trial court lacks any authority to adjudicate Joseph's claim.

The trial court's only choice, in fact, was to dismiss Joseph's claim for a lack of subject matter jurisdiction. If Joseph then wished to pursue his claim, he was fully entitled both to petition the trial court for the opening of Sofia's estate and to file his claim against that estate once it was opened. Regardless, following Sofia's death, the trial court in case number 94—P—6222 did not possess the jurisdiction to adjudicate the constitutionality of Joseph's claim. Its order doing so therefore is void, and we have no choice but to vacate it.

Although at first this decision may appear unduly technical, the consequences of the contrary result are significant. Article 18 of the Probate Act establishes detailed procedures for the adjudication of claims against a decedent's estate. Among these procedures is a schedule setting forth the priority in which claims against a decedent's estate, including section 18—1.1's statutory custodial claim, must be paid. 755 ILCS 5/18—10, 18—13 (West 1996). If a custodian were allowed to file a statutory custodial claim against the guardianship estate, that person effectively could circumvent the priority schedule established in sections 18—10 and 18—13. Statutory custodial claims currently share first priority with funeral and burial expenses and administration expenses. 755 ILCS 5/18—10 (West 1996). If the custodian files his statutory claim against the decedent's estate, and that claim equals or exceeds the value of the decedent's estate, sections 18—10 and 18—13 would require the custodian to share the decedent's estate with the funeral home and the administrator. Sections 18—10 and 18—13 are undermined, however, if a statutory custodial claim can be filed against a guardianship estate, because a guardianship proceeding is not governed by the priority schedule established in sections 18—10 and 18—13. Thus, following the ward's death, a custodian possessing a valid statutory claim could decimate the guardianship estate

before the decedent's estate is opened, leaving the funeral home, the administrator, and every other creditor of the decedent's estate without recourse. This clearly is not the result that the legislature intended.

## CONCLUSION

We vacate the circuit court's judgment declaring section 18—1.1 of the Probate Act unconstitutional and remand the cause for further proceedings consistent with this opinion.

*Judgment vacated;*
*cause remanded.*